IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

             v.                :       CRIMINAL NO.  06-303

MARK HARVEY SILVERSTEIN        :


GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Mark Silverstein wrote four threatening letters to the National Park Service.  The letters included such statements as "If I don't get my pension, I'll arrange it so that nobody gets a pension."  The defendant poses a danger to society.  For the reasons set forth below, the government recommends a sentence of incarceration within the advisory guideline range of 12-18 months.[1]

Pursuant to United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006), this Court must calculate the advisory guideline range, and then consider that range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."  Id. at 329.  See also

_____

[1] The government apologizes for the delay in the submission of its sentencing memorandum.  The government had been informed by defense counsel that she would be filing a motion for a downward departure at the end of last week.  The motion was not filed until after close of business on Monday, October 23rd.  The government has worked expeditiously to respond to the defendant's argument and to present its position with respect to the upcoming sentencing.

United States v. Schweitzer, 2006 WL 1889986, at *8 (3d Cir. July 11, 2006) (directing district courts to explain all guideline determinations and final sentences, stating, "There is simply no substitute for on-the-record discussion and deliberation. It ensures that the parties are fully informed of their rights and obligations and that the appellate court will be able to assess the merits of the final judgment."); United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006) (district courts "should observe the requirement to state adequate reasons for a sentence on the record so that this court can engage in meaningful appellate review.").[2]

The government explains below its view of the proper consideration in this case of the Section 3553(a) factors, which support a within-guideline sentence in this case.

## I.     BACKGROUND

On July 26, 2006, the defendant pled guilty pursuant to a plea agreement to a two-count information charging the defendant with mailing threatening communications, in violation of 18 U.S.C. § 876(c). During his plea colloquy, the defendant admitted that the mailing involved four threats, as defined in United States Sentencing Guidelines Section 2A6.1. The threats, all of which were signed "Warlord of Philadelphia," included such statements as "I want 365 days as a GS-11, so that I can retire. Should I not get them, look for your utilities to be shut-off," "I'll repeat my demands of employment as a GS-11 Position Classification Specialist, full

---

[2] In United States v. Grier, 449 F.3d 558, 574-75 (3d Cir. 2006), the panel held that the solitary statement, "The Court believes that 100 months is reasonable in view of the considerations of section 3553(a)," was insufficient to explain the district court's reasoning, and remanded for resentencing. This opinion was subsequently vacated and rescheduled for hearing en banc, likely on a separate issue in the case, regarding whether the preponderance standard applies at sentencing to proof of additional uncharged crimes. The holding with respect to the sufficiency of the sentencing explanation appears to represent the view of the Third Circuit, as made clear in the other cases cited above.

back pay to 1984.  If I don't hear from you by May 1, 2006, I'll assume that you've rejected my demands.  In that case, I'll let nature take its course," and  "If I don't get my pension I'll arrange it so that nobody gets a pension."

II.     SENTENCING CALCULATION.

A.      Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is 20 years imprisonment, three years supervised release, a $500,000 fine, and a $200 special assessment.

B.      Sentencing Guidelines Calculation.

In imposing sentence, the Court must take into account the considerations of sentencing set forth in 18 U.S.C. § 3553(a).  United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines.  The Third Circuit has confirmed:  "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances."  Cooper, 437 F.3d at 330.  See also United States v. King, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006) (explaining requirement of guideline determination).  This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision.  Id.; see also United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (court may continue to determine by a preponderance of the evidence and consider the defendant's relevant conduct in determining the guideline range).  In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before <u>Booker</u>, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-<u>Booker</u> caselaw, which continues to have advisory force.

<u>United States v. King</u>, 2006 WL 1889976, at *8 (3d Cir. July 11, 2006).

The necessary calculation of the guideline range includes the determination whether there should be a departure, either upward or downward, pursuant to the Sentencing Guidelines. <u>See, e.g.</u>, <u>United States v. King</u>, 2006 WL 1889976, at *5 (3d Cir. July 11, 2006) (holding that district court erred in not using "ratcheting" procedure to determine extent of upward departure). The issue of guideline departures is distinct from the Court's authority, recognized in <u>Booker</u>, to impose a final sentence which deviates from the guideline range (which the Third Circuit calls a "variance," <u>see</u> <u>United States v. Vampire Nation</u>, 451 F.3d 189, 195 n.2 (3d Cir. 2006)). While the final sentence is subject to appellate review for reasonableness, this Court's decision to deny a requested departure is not itself subject to review if the Court makes clear that its denial is based not on a legal determination that the departure is unavailable but on the Court's exercise of its discretion. <u>Cooper</u>, 437 F.3d at 332-33.

In this case, as stated in the presentence report (PSR), the correct guideline calculation is as follows. The base offense level is 12 under U.S.S.G. § 2A6.1. Pursuant to U.S.S.G. § 2A1.6(b)(1), since the offense involved more than two threats, a two-level increase is applied. Because the defendant accepted responsibility, the offense level is reduced by two. <u>See</u> U.S.S.G. § 3E1.1(a). The resulting adjusted base offense level is 12. The defendant is in criminal history category II as a result of his conviction in 1998 for terroristic threats, harassment

by communication, and stalking.  The sentencing guidelines range is therefore 12-18 months imprisonment.

1.      The Court Should Deny the Defendant's Motion for a Downward Departure.

The defendant has moved for a downward departure under U.S.S.G. § 5K2.13 based on the defendant's purported diminished capacity at the time of the offense.  This departure is inappropriate here under the explicit terms of the sentencing guidelines and based on the evaluation provided by the defendant's treating physician attached to the defendant's motion.

Under U.S.S.G. § 5K2.13, a downward departure may be warranted if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."  The guidelines define "significantly reduced mental capacity" as "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  U.S.S.G. § 5K2.13 Applic. Note 1.  The defendant's sole support for this downward departure is his claim that he has been diagnosed as bipolar and the statement from his treating physician, Dr. Koneru, that defense characterizes as "when in manic phases [he] typically writes harassing or threatening letters."  Def. Sent. Memo at 6.  However, neither of those two statements addresses what is at issue under 5K2.13, namely whether the defendant during these episodes has a significantly impaired ability to understand the

wrongfulness of his behavior or to exercise the power of reason or that he has a significantly impaired ability to control behavior the defendant knows is wrongful. The defendant glibly contends that were it not for the defendant's mental illness, "it is unlikely Mr. Silverstein would have written these bizarre letters," but there is no basis for that conclusion in Dr. Koneru's statements. Even with the prompting language in question number 4 from the defendant to Dr. Koneru asking whether Dr. Koneru could say that the defendant committed the offense because of his mental state or a significantly reduced mental capacity, Dr. Koneru answered solely and completely with the statement, "I believe Mr. silverstein [sic] may have experienced a hypomanic episode during the time that charges were filed." Def. Sent. Memo Exh. D. This statement does not come close to making the assertion for which the defendant relies on it. The statement is entirely ambivalent, saying only that the defendant "may have" experienced such an episode, and, as importantly, it does not answer whether a hypomanic episode would have left the defendant in a significantly reduced mental capacity. The defendant has not, and cannot, justify a downward departure in this case.

Even if the defendant were able to establish that his mental capacity were significantly reduced at the time of the offense,[3] a downward departure under Section 5K2.13 would nevertheless be inapplicable and inappropriate. Section 5K2.13 states that the Court "may not depart below the applicable guideline range if . . . (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence . . . ." The defendant cavalierly claims in a footnote that

---

[3] Interestingly, Dr. Koneru does not state that he believed the defendant may have experienced a hypomanic episode at the time of the offense, but rather states that he believes that the episode may have happened during the time that "charges were filed." (emphasis added).

the instant matter does not implicate this provision because the defendant "never engaged in, or had any intention of committing, any violent conduct." Def. Sent. Memo at 5, n.3. The defendant reads out of the sentencing guidelines provision that language that states "a serious threat of violence." The ability of the defendant to claim ex post that he never intended to commit any violent conduct does not vitiate the serious threat of violence present in the letters sent by the defendant. The guidelines state that this departure is not applicable where the <u>offense</u> involves a serious threat of violence. Certainly the defendant's statements set forth in his letters including "If I don't get my pension, I'll arrange it so that nobody gets a pension," are reasonably perceived as a serious threat. The defendant certainly cannot establish that the offense to which he pled guilty did not involve a serious threat of violence. Moreover, it is clear that the facts and circumstances of the defendant's offense indicate a need to protect the public. The defendant's own papers emphasize the defendant's long history of his claimed mental illness. According to the defendant's memo, he was first diagnosed with this illness "over 20 years ago." Def. Sent. Memo, at 6. He has been under the care of Dr. Koneru since 2002. <u>Id.</u> at 6, n.4. Neither his diagnosis, nor the care of Dr. Koneru protected the public from this offense. There is no basis from which to find that there is not an ongoing need to protect the public. For these reasons as well, this departure is inapplicable here.

        Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

     (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

     (2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A full review of all pertinent factors supports the conclusion that a within-guideline sentence is appropriate in this case.

III.     ANALYSIS OF 3553(a) FACTORS.

A.     Importance of the Guideline Range.

The advisory guideline range carries considerable weight even after Booker.  As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range . . . ."  Cooper, 437 F.3d at 331.  The Court later noted:  "The farther a sentence varies from the advisory guidelines range, the more

compelling the judge's reasons must be."  United States v. King, 2006 WL 1889976, at *7 (3d Cir. July 11, 2006), quoting United States v. Jordan, 435 F.3d 693, 696-97 (7th Cir. 2006).

The importance of the final guideline range has nothing to do with the guidelines' former mandatory status, which was eliminated in Booker.  Rather, the final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities.  Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

First, the guidelines are much more comprehensive than any other Section 3553(a) factor.  Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing.  "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)."  United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors.  See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

Second, the guidelines are the product of years of nationwide experience and sustained study.  In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior

sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account. U.S.S.G. App. C. Indeed, the Booker Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Booker, 543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. United States v. Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

Third, the correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[4] Congress, the Court, and the

---

[4] Every opinion in Booker acknowledged the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible. See, e.g., Booker, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04

-10-

guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing. "The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases. The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide). Thus, measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

Thus, the Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct." Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[5]

_____

(dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

[5] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what [the defendant]'s sentence would have been had he been convicted of a similar state-law offense. Booker directs our reasonableness review to the factors set forth under federal law for federal criminal offenses. That a separate sovereign chooses to implement its criminal sentencing scheme in a different

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[6] reversals of sentences imposed within the guideline range have been extraordinarily rare, and have occurred only where the appellate court found that the district court did not adequately explain the sentence.  See, e.g., United States v. Carty, 2006 WL 1975895, at *4-6 (9th Cir. July 17, 2006).  Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[7]

B.      Application of the § 3553(a) Factors.

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to

---

manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

[6]  See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

[7]  "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed."  United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005).  The Third Circuit cited this view with approval in King.  Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

avoid disparity in sentencing, which, as explained above, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also point to this conclusion.

The nature and the seriousness of this offense call for a term of imprisonment in this case. While the defendant claims that the way in which the threats were written signaled that a person with a mental illness was the author, that is of little solace to the recipients of the threats who would have no reason to conclude that they would be safer receiving threats from an individual who has a mental illness than from one who does not.

Moreover, a sentence of incarceration is important as well to promote respect for the law. The defendant justifies his conduct in the letter to this Court not by claiming that he was unable to appreciate the significance of what he was doing, but rather by claiming that he thought his letters were free speech. Dr. Koneru's letter suggests that before this offense, the defendant had been told that he did not have such a right, but he nevertheless continues to raise this purported defense as an explanation for his actions. A sentence of incarceration is appropriate here to promote the defendant's understanding of and respect for the law.

A sentence of incarceration is also appropriate to afford adequate deterrence and to protect the public. The defendant claims, amazingly, that he "responds well to medication and treatment." Def. Sent. Memo at 10. Yet he ignores the fact that he was on medication and under treatment at the time of this offense. Moreover, he ignores the fact that long after he had been diagnosed with his mental illness, he committed another crime for which he served nearly a year and a half in prison in local custody. Neither his medication nor his treatment were able to prevent that offense, and neither, including the treatment of his current treating physician, were able to prevent this one. The defendant also emphasizes that he is not physically threatening. He

ignores, however, the danger the defendant poses to the community by writing threatening letters. It is not enough that the public be protected from physical violence from the defendant. The defendant poses a threat to the public by writing dangerous and threatening letters. Again Dr. Koneru's letter is instructive on this point. Defense counsel asked Dr. Koneru whether in his opinion, the defendant is a non-violent person. Far from stating that the defendant is non-violent, Dr. Koneru carefully replied that "Mr. Silverstein did not exhibit any <u>physical</u> violence during the past 3-4 years." Exh. B., at 1 (emphasis added). This response highlights the ongoing possible threat to the public that the defendant poses.

The defendant's papers to this Court also place heavy weight on the support network the defendant has. But the defendant ignores and minimizes the extensive support network the defendant had on hand when he perpetrated this offense. He had been diagnosed as bipolar. He was under the care of Dr. Koneru. He was close to his sister. He was involved in a relationship with Ms. Petrocelli. None of this "broad network of support" that the defendant claims would protect the public now protected the public in April of this year when the defendant wrote four threatening letters to the National Park Service.[8]

---

[8] The defendant also claims that incarceration would cause a significant disruption in his life. Incarceration is intended to be a significant disruption in people's lives. Indeed, this claim arguably undermines the defendant's contention that a sentence of incarceration is not necessary to reflect the seriousness of the offense and to promote respect for the law. Unlike the lives of those he has threatened, the defendant's life, according to his papers, has not been disrupted. It is difficult to determine how he could have an appreciation of the seriousness of the offense in this case if it has had no significant impact on his life.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence of incarceration.  For all of these reasons, the government respectfully recommends that the Court sentence the defendant within the guideline range defined above.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____
ARA B. GERSHENGORN
Assistant United States Attorney

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic filing and first class mail upon:

Mara Meehan, Esq.
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
Suite 540 West
Philadelphia, PA 19106

_____
ARA B. GERSHENGORN
Assistant U.S. Attorney

DATE: October 25, 2006